WARDLAW, J.,
concurring in part and dissenting in part.
I concur in the majority’s holding affirming the district court’s grant of summary judgment on J.C.’s state law claims; those claims are barred by the Eleventh Amendment. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). And because J.C. cannot satisfy the Rehabilitation Act’s “strict[]” causal standard, K.M. ex rel. Bright v. Tustin Unified Sch. Dist., 725 F.3d 1088, 1099 (9th Cir.2013),I also concur in that portion of the majority’s holding. As to J.C.’s ADA claim, however, I respectfully dissent.
The majority holds that J.C. has not raised a genuine dispute of material fact on the causation element of his ADA claim, i.e., whether he was denied admission to Fammatre “by reason of his disability.” 42 U.S.C. § 12132. According to the majority, the second-grade class was at capacity for budgetary reasons, so the decision to exclude J.C. was reasonable and non-discriminatory. However, because the district court held that J.C. was not “otherwise qualified” to attend Fammatre and did not reach the causation element, the appropriate course is to remand for the district court to consider this question in the first instance.
Moreover, “[w]here a party’s motive or intent is in issue, summary judgment is rarely proper.” Atkins v. Union Pac. R. Co., 685 F.2d 1146, 1149 (9th Cir.1982). Here, J.C. has provided sufficient evidence to raise a genuine issue of fact as to whether the second-grade enrollment cap was motivated solely by legitimate budgetary concerns or at least in part by discriminatory animus. It is undisputed that J.C. was first on Fammatre’s waiting list. In other words, the enrollment cap narrowly excluded J.C. Among other evidence, J.C. provided attendance sheets showing that Fammatre had accommodated 89 second graders during the 2010-2011 school year, then reduced the second-grade enrollment cap to 87 students for the 2011-2012 school year. The attendance sheets also indicate that Fammatre could have moved one third grader out of the second and third-grade combination class, creating space for an additional second grader without adverse financial effects. Additionally, J.C.’s mother, W.P., testified that Fammatre staff often responded to J.C.’s disability with frustration: For example, W.P. once visited J.C. at school and discovered that he had been excluded from a class trip to the library. W.P. also spoke to J.C.’s teacher about a time when she forced J.C. and another disabled student to turn their desks around and face the back of the classroom. The majority dismisses these troubling incidents as “isolated negative interactions,” but “[w]hen plaintiffs allege intentional discrimination under the ADA, ... ‘any indication of discriminatory mo *655 tive may suffice to raise a question that can only be resolved by a factfinder.’” Pac. Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1156 (9th Cir.2013) (quoting McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir.2004)).
Based on this and other evidence, I would find that J.C. has raised a genuine dispute of material fact on the causation element of his ADA claim. I would further hold that the ADA claim is not barred by Eleventh Amendment immunity under existing law, see Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792 (9th Cir.2004), but remand for further consideration in light of United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006).